# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

**09-1292**

PETER NORMAN BROUSSARD, JR.
AND PATSY COMPTON BROUSSARD

VERSUS

THETA CHARLES COMPTON,
WOODROW MAYS COMPTON,
AND ELVA FAY COMPTON

************

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 72825-E
HONORABLE KEITH R. J. COMEAUX, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Sylvia R. Cooks, James T. Genovese, and David E. Chatelain,* Judges.

**AFFIRMED.**

**William A. Repaske**
**Landry, Watkins, Repaske & Breaux**
**211 E. Main Street**
**Post Office Drawer 12040**
**New Iberia, Louisiana 70562-2040**
**(337) 364-7626**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Theta Charles Compton, Woodrow Mays Compton,**
    **and Elva Fay Compton**

_____
    *Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Burton E. Cestia, Jr.**
**Burke and Cestia**
**223 East Main Street**
**Post Office Box 10337**
**New Iberia, Louisiana 70562-0337**
**(337) 365-6628**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Peter Norman Broussard, Jr. and**
     **Patsy Compton Broussard**

**GENOVESE, Judge.**

In this contentious family feud over the ownership of a home and the property upon which it was built, the Defendants/Appellants, Theta Charles Compton, Woodrow Mays Compton, and Elva Fay Compton, appeal the trial court's judgment in favor of the Plaintiffs/Appellees, Peter Norman Broussard, Jr. and Patsy Compton Broussard. For the following reasons, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Peter Norman Broussard, Jr. (Peter Broussard) and Patsy Compton Broussard (Patsy Broussard) filed a Petition for Breach of Contract and Revocation of Donation against Theta Charles Compton (Theta Compton),[1] Woodrow Mays Compton (Woodrow Compton),[2] and Elva Fay Compton (Elva Compton).[3] The Plaintiffs sought to revoke Theta Compton's donation to Woodrow Compton and Elva Compton of the property upon which the Plaintiffs built a home. The Plaintiffs asserted that they built the home on Theta Compton's property with her permission and with the understanding that she would donate to them the property upon which they built the home upon its completion.

The record indicates that in the early 1990s, Theta Compton owned a home located on Cemetery Road in St. Martin Parish, Louisiana, which she acquired from her mother, Violetta Drake Charles (Violetta Charles).[4] According to the Plaintiffs, they voluntarily assumed the responsibility of caring for Violetta Charles and maintaining her property. Theta Compton allegedly "offered to give the home and immovable property" to the Plaintiffs in consideration for the care and assistance

---

[1]Theta Compton is Patsy Broussard's mother.

[2]Woodrow Compton is Patsy Broussard's brother.

[3]Elva Compton is Patsy Broussard's sister.

[4]Violetta Charles lived in the home until her death in May of 1993.

which they gave to her mother, Violetta Charles. Tragically, in May of 1993, the house burned down, and Violetta Charles perished in the fire. Thereafter, the Plaintiffs allege that even though the home they were to receive was destroyed by fire, Theta Compton proposed an alternative to them. According to their petition, Plaintiffs allege:

> Theta Charles Compton offered to provide [money from the insurance proceeds] for the purchase of materials only for the construction of a house to be owned by [the Plaintiffs] in exchange for Peter Norman Broussard, Jr. clearing the immovable property owned by Theta Charles Compton of a burned out home previously occupied by Theta Charles Compton's mother, as well as other dilapidated buildings, junk vehicles[,] and overgrown trees and shrubs[,] and providing all of the labor and additional materials needed for the construction of a home to be owned by [the Plaintiffs], the said home to include a bedroom for Theta Charles Compton to reside in for the remainder of her life should she so desire. Theta Charles Compton also provided the immovable property where the home was to be built. As part of the contract and prior to the construction of the home[,] Theta Charles Compton had promised that she would donate the immovable property on which the home was constructed to [the Plaintiffs] upon completion of the home.

The Plaintiffs[5] began constructing a house on the property in 1993. Construction was completed in 1995, and the Plaintiffs have lived in the home since before its completion. The Plaintiffs assert that "the home was built on the immovable property with the full permission and knowledge of Theta Charles Compton." However, the Plaintiffs contend that Theta Compton did not fulfill her promise to donate to them the property upon which the house was built. Specifically, the Plaintiffs assert that:

> At the beginning of 2001[,] Theta Charles Compton refused to honor her part of the contract and execute a donation of the immovable property to [the Plaintiffs] but[,] instead[,] wanted to donate the home which she did not own and the immovable property to Patsy Compton Broussard, Elva Fay Compton Bourda and Woodrow Mays Compton. [The Plaintiffs] refused to accept a one[-]third interest and demanded

_____

[5]Peter Broussard is a carpenter/builder.

that Theta Charles Compton fulfill her contractual agreement to donate the immovable property to [the Plaintiffs].

Nevertheless, Theta Compton did subsequently effectuate a donation of the property at issue herein to Patsy Broussard's siblings, Woodrow Compton and Elva Compton, in February of 2001. The Plaintiffs claim that they "were unaware of the . . . donation . . . until March of 2007[,] when they received correspondence from Woodrow May[s] Compton." It was this correspondence which the Plaintiffs assert prompted their filing of the instant action in December of 2007.

The Plaintiffs' petition requests that the donation from Theta Compton to Woodrow Compton and Elva Compton be "revoked in so far as it includes the home and improvements made by [the Plaintiffs] and the immovable property for which they had contracted." It further declares:

> [The Plaintiffs] are entitled to . . . enforcement of the contract between them and Theta Charles Compton declaring [the Plaintiffs] to be the owners of the immovable property on which the home stands and the home built by them to be theirs with the right of Theta Charles Compton to live in the private bedroom and bath for the rest of her life.
>
> []
>
> Alternatively, in accordance with Louisiana Civil Code Article 496[6] [the Plaintiffs] are entitled to the cost of the materials and workmanship, or current value or enhanced value of the immovable property.
>
> []
>
> Alternatively, in accordance with Louisiana Civil Code Article

---

[6]Louisiana Civil Code Article 496 provides:

> When constructions, plantings, or works are made by a possessor in good faith, the owner of the immovable may not demand their demolition and removal. He is bound to keep them and at his option to pay to the possessor either the cost of the materials and of the workmanship, or their current value, or the enhanced value of the immovable.

529[7] [the Plaintiffs] are entitled to remain in possession of their home until [they receive] reimbursements for the expenses and improvements to which they are entitled.

The Defendants countered with an Exception of No Cause of Action,[8] Answer, and Reconventional Demand. In their answer and reconventional demand, the Defendants "admit that Theta Charles Compton permitted [the] Plaintiffs to reside on the property"; however, the Defendants denied ever acknowledging that the home was to belong to the Plaintiffs. The Defendants asserted their entitlement "to a reasonable credit for the value of [the] Plaintiffs' use and occupancy of the property in question." The Defendants also sought "an order . . . recognizing their ownership of the subject property and ordering [the Plaintiffs] to immediately surrender possession of the subject property to [them]."

On June 27, 2008, the Plaintiffs filed a First Supplemental and Amending Petition on Petition for Breach of Contract and Revocation of a Donation. In it, the Plaintiffs supplemented their demand against the Defendants, asserting:

> Alternatively[, the Plaintiffs] are entitled to be reimbursed for the improvements made to the property in excess of the $32,000.00 expended by Theta Charles Compton on the grounds of unjust enrichment in an amount to be determined at the time of trial because the improvements were made based upon the promises made by Theta Charles Compton that the immovable property would be donated to petitioners in the future.

Trial in this matter was held on September 25, 2008, and November 12, 2008, after which, the trial court took the matter under advisement. The trial court wrote Reasons for Judgment, dated December 17, 2008, wherein it ruled, in pertinent part:

---

[7]Louisiana Civil Code Article 529 provides: "The possessor, whether in good or in bad faith, may retain possession of the thing until he is reimbursed for expenses and improvements which he is entitled to claim."

[8]The minutes of the trial court reflect that the Defendant's Exception of No Cause of Action was heard and denied on August 14, 2008.

In this case, no act translative of ownership exists to the [P]laintiffs. Therefore, we must turn our attention to Article 497[9] of the Louisiana Civil Code. This article provides for obligations from owner to possessor and possessor to owner when the possessor is a bad faith possessor. [Louisiana Civil Code Article] 497 provides that when construction, plantings, or works are made by bad faith possessors, the owner of the immovable may keep them or he may demand the demolition and removal at the expense of the possessor, and, in addition, damages for the injury that he may have sustained. If he does not demand demolition and removal, he is bound to pay at his option either the current value of the materials and of the workmanship of the separate improvements that he has kept or the enhanced value of the immovable. [La.Civ.Code art.] 497.

In the case before us, [D]efendants, Elva Compton and Woodrow Compton, sent a letter to [the Plaintiffs], requesting that they be evicted from the property. At no time did they request the removal of the construction. Therefore, this is a tacit acceptance of the construction on the property indicating that the owners of the property do not want its removal but would be bound to pay either the current value of the materials and of the workmanship of the separate improvements or the enhanced value of the immovable.

This also comports with the argument being made by [the Plaintiffs] that they are entitled to unjust enrichment.

. . . .

Therefore, in the instant action, all of the requirements of unjust enrichment have been met. There is an enrichment to Elva Compton and Woodrow Compton, that being the home built on the property; there is an impoverishment to the [Plaintiffs], that being the home they built and for which they have not been compensated. There is a connection between the enrichment and the impoverishment. The next requirement is that there must be an absence of justification of cause for the enrichment or impoverishment. In this case, the [Plaintiffs] had the verbal commitment from Ms. Theta Compton that they should build this home on the piece of property and it would be theirs. Therefore, although not a legal justification or cause, there was a moral justification

_____

[9]Louisiana Civil Code Article 497 provides:

When constructions, plantings, or works are made by a bad faith possessor, the owner of the immovable may keep them or he may demand their demolition and removal at the expense of the possessor, and, in addition, damages for the injury that he may have sustained. If he does not demand demolition and removal, he is bound to pay at his option either the current value of the materials and of the workmanship of the separable improvements that he has kept or the enhanced value of the immovable.

and cause for them to do so. Finally, there must be no other remedy available to the [P]laintiffs. In this case, there is no other remedy available to the [Plaintiffs] to compensate them for their impoverishment. That being said, unjust enrichment is applicable to this case.

Considering the trial testimony of the certified land appraiser, Robert Braquet, the trial court determined that the home was valued at $220,000.00. The trial court then deducted $32,000.00 from that amount as a credit for the amount initially paid by Theta Compton for the construction of the home, thereby determining that the value of the enrichment was $188,000.00. Additionally, the trial court addressed the Defendants' request for a credit for the Plaintiffs' use of the home. The trial court stated:

> [N]ot only was there no evidence presented as to the rental value for all those years, even if there were, the evidence at trial strongly indicates that the family supported the fact that the [Plaintiffs] lived there, had a room for Theta [Compton] to stay in when she desired, and maintained the surrounding property. At no time from 1993 until 2007 was any mention made that the [Plaintiffs] would owe any type of rent to the owners. There is evidence in the record, however, that Elva Compton and Woodrow Compton decreed in a letter to Patsy Broussard that $250.00[10] per month would be a fair sum for the maintenance of the home and the rental value of the home. Therefore, the Court will consider this as the rental value requested by Elva and Woodrow [Compton]. Therefore, the [c]ourt will award rental value to the [D]efendants from August 6, 2007, which was the date of the letter, until such time that the Broussards vacate the premises. The [c]ourt will grant a credit to the [D]efendants for this amount of money against the $188,000.00 owed by the [D]efendants to the [P]laintiffs.

On February 26, 2009, before the trial court's ruling was signed into judgment, the Defendants filed a Motion and Order for Reconsideration or New Trial. The Defendants urged that the trial court misapplied the principle of unjust enrichment.

---

[10]Though the trial court declared that the letter from Elva Compton and Woodrow Compton requested $250.00 per month from the Plaintiffs, the record reflects that the amount requested was actually $200.00. However, because this discrepancy was not assigned as error by either party, it is not before this court for review.

Specifically, the Defendants asserted:

> The house constructed on the [Defendants'] property was constructed during the 1993 to 1995 time period. The [Plaintiffs] never obtained a deed for the house, despite their claim that one was promised to them if they would construct the house. It has been more than ten years since the completion of the home, and any claim that the [Plaintiffs] would have for unjust enrichment [has] prescribed.

The Defendants also asserted that the trial court erroneously applied La.Civ.Code art. 497 when "[u]nder the facts found by the [c]ourt, [La.Civ.Code] art. 493[11] should have been utilized by the [c]ourt to determine the rights and obligations of the parties." Finally, the Defendants disputed the trial court's calculations relative to the value of the home and the amount of rent owed.

On April 7, 2009, the trial court signed a judgment concomitant with its written Reasons for Judgment issued on December 17, 2008. Thereafter, the Plaintiffs filed a Motion and Order for Reconsideration or New Trial on April 21, 2009. In their motion, the Plaintiffs urged that, pursuant to La.Civ.Code art. 529, they be allowed to remain in possession of the home until they are reimbursed for the expenses and improvements. Therefore, the Plaintiffs sought the reconsideration of that provision

---

[11]Louisiana Civil Code Article 493 provides, in relevant part:

> Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent.

> When the owner of buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition. If he does not remove them within ninety days after written demand, the owner of the land may, after the ninetieth day from the date of mailing the written demand, appropriate ownership of the improvements by providing an additional written notice by certified mail, and upon receipt of the certified mail by the owner of the improvements, the owner of the land obtains ownership of the improvements and owes nothing to the owner of the improvements. Until such time as the owner of the land appropriates the improvements, the improvements shall remain the property of he who made them and he shall be solely responsible for any harm caused by the improvements.

of the trial court's judgment which ordered that they vacate the home. The Plaintiffs

asserted that in accordance with their rights under La.Civ.Code art. 529, "the eviction

is premature" and, therefore, the trial court should not have ordered them to vacate

the home "until after [they] are reimbused for the expenses and improvements."

A hearing on the parties' motions for reconsideration was held on May 6, 2009,

after which, the trial court again took the matter under advisement. The trial court

wrote Reasons for Judgment on the motions for reconsideration, dated June 5, 2009,

wherein it ruled, in pertinent part:

> Defendants argue that the [c]ourt should not have applied [La.Civ.Code art.] 497 and the principal [sic] of unjust enrichment but rather focused on [La.Civ.Code art.] 493. The [c]ourt has reviewed the memorandum submitted by the parties and the relevant law on this issue.
>
> [Louisiana Civil Code Article] 493 states that when a building is built on the land of another with his consent, the structure belongs to the builder. When the owner of that structure no longer has a right to keep it on the land of another, he may remove it subject to his obligation to restore the property to its former condition; if it is not removed, the property owner has the right to demand by written notice that the house owner remove the house within 90 days. Kibbe v. Lege, 604 So.2d 1366 (La.App. 3 Cir. 1992).
>
> Application of this Civil Code Article actually bolsters [the Plaintiffs'] position. The house was built on the [D]efendants' property with the consent of the [D]efendants; therefore, the house belongs to [P]laintiffs. Plaintiffs have a right to remove the home subject to an obligation to restore the property to its former condition. The [P]laintiffs have made no effort to exercise this right; therefore, [D]efendants then had the right to demand by written notice that the [Plaintiffs] remove the house within 90 days. Defendant[s] never did send [P]laintiffs a request for removal of the home. For these reasons, the house built by the [Plaintiffs] belongs to them and under [La.Civ.Code art.] 493, the result remains the same as in the reasons rendered previously by this [c]ourt.

The trial court denied the Defendants' Motion for Reconsideration or New Trial and

granted the Plaintiffs' Motion for Reconsideration or New Trial. A judgment was

signed by the trial court on June 18, 2008, which amended its previous judgment

solely to grant the Plaintiffs "possession of the home until they are reimbursed for expenses and improvements in the amount of one hundred eighty[-]eight thousand ($188,000.00) dollars[]" in accordance with La.Civ.Code art. 529. The Defendants appeal.

## ASSIGNMENTS OF ERROR

The Defendants assert the following assignments of error:

1.  If Theta Compton granted to [the Plaintiffs] permission to construct their house on her property, as found by the [t]rial [c]ourt, only [La.Civ.Code] art. 493 is applicable, and the remedies available are limited to removal of the structure at [P]laintiffs['] cost or abandonment of the structure to the landowners, and the [t]rial [c]ourt erred in holding otherwise.

2.  The doctrines of unjust enrichment and quantum meruit are not applicable to the claims made by the [P]laintiffs nor to the facts as found by the [t]rial [c]ourt, and the [t]rial [c]ourt erred in holding that these doctrines are applicable and in granting reimbursement to the [P]laintiffs.

3.  The [t]rial [c]ourt erred in granting possession of the home to [the Plaintiffs] until they are reimbursed for expenses and improvements in the amount of $188,000[.00].

4.  The evidence presented at trial did not establish that Theta Compton granted to [the Plaintiffs] permission for them to construct their house on Theta Compton's property nor that she gifted the [Plaintiffs] with $32,000[.00] which they used to construct their home, and the [t]rial [c]ourt erred in holding otherwise.

## LAW AND DISCUSSION

Our Louisiana Supreme Court has instructed us on the standard of review relative to our review of the trial court's ruling in this matter as follows:

> A court of appeal should not set aside the factual findings of a trial court absent manifest error or unless clearly wrong. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). However, if a court of appeal finds that the trial court committed a reversible error of law or manifest error of fact, the court of appeal must ascertain the facts de novo from the record and render a judgment on the merits. *LeBlanc v. Stevenson*,

00-0157 (La.10/17/00), 770 So.2d 766. Although appellate courts should accord deference to the factfinder, they nonetheless have a constitutional duty to review facts. *Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 93-3099, p. 8 (La.7/5/94), 639 So.2d 216, 221. Because appellate courts must perform this constitutional function, they have every right to determine whether the trial court verdict was clearly wrong based on the evidence or clearly without evidentiary support. *Ambrose* at p. 8-9, 639 So.2d at 221. The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Stobart v. State of Louisiana, through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable. *Stobart*, 617 So.2d at 882. We have previously emphasized the principle that "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Stobart*, 617 So.2d at 882-83 (citing *Housley v. Cerise*, 579 So.2d 973 (La.1991)(quoting *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La.1990))).

*Siverd v. Permanent Gen. Ins. Co.*, 05-973, pp. 3-4 (La. 2/22/06), 922 So.2d 497, 499-500.

The Defendants, in brief, contend that the issues before this court are: (1) which Louisiana Civil Code Article applies to the instant case, La.Civ.Code art. 497 or La.Civ.Code art. 493; (2) whether the doctrines of unjust enrichment and quantum meruit are applicable to the claims and facts of this case; (3) whether La.Civ.Code art. 592 applies in order to grant to the Plaintiffs the right to retain possession of the home until they are reimbursed; and (4) whether the evidence supports the trial court's conclusion that Theta Compton gave the Plaintiffs her permission and $32,000.00 to build their home.

The trial court heard testimony from twenty-one witnesses throughout the course of a two-day trial. It concluded that based on the evidence presented, the Plaintiffs had proven their case. The trial court's finding that the Plaintiffs built their

home with Theta Compton's consent was a factual determination based upon its evaluation of the evidence and assessment of the witnesses' credibility. In the face of conflicting testimony on whether the Plaintiffs were building a home for themselves at Theta Compton's suggestion or whether Peter Broussard was constructing a "family home" at Theta Compton's direction, the trial court observed, firsthand, the demeanor of the witnesses and made an assessment as to their credibility.

> Where a conflict exists in the testimony, the issue to be resolved by the reviewing court is not whether the trier was right or wrong, but whether the decision reached by the trier was reasonable. *Stobart*, 617 So.2d at 882-83. . . . Where two permissible views of the evidence exist, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 883.

*Id.* at 501. We find the trial court's acceptance of the Plaintiffs' rendition of how and why they built a home on the property at issue herein to be a reasonable determination.

According to the Defendants, La.Civ.Code art. 493 applies and "[t]he only remedies that are available under Article 493 are for the owner of the structure to remove the structure, or he may abandon the structure to the landowner (after the appropriate actions are taken)." Thus, they contend that the trial court's ruling that the Defendants' owe the Plaintiffs $188,000.00 pursuant to the provisions of La.Civ.Code 497 is erroneous. We disagree.

The trial court determined that the Plaintiffs were bad faith possessors of the immovable property because they did not possess an act translative of title. Because the Plaintiffs are bad faith possessors, La.Civ.Code art. 497 contains the remedy available to "the owner of the immovable[.]" The trial court further concluded that the Plaintiffs legitimately believed that upon the completion of the building of their

11

home, Theta Compton would donate the immovable property upon which it was built to them. Yet, when the Plaintiffs received a letter from the Defendants in 2007, they discovered that the immovable property had, instead, been donated to Woodrow Compton and Elva Compton, and not to them.

When correspondence, dated August 6, 2007, was received by the Plaintiffs, it contained the demand that the Plaintiffs contribute "$200.00 per month to be set aside as your contribution to the taxes and insurance beginning 1 September 2007." Clearly, the Defendants chose not to demand demolition and removal of the home; therefore, they became "bound to pay" the Plaintiffs as per La.Civ.Code art. 497.

Finally, the trial court denied the Defendants' Motion for Reconsideration or New Trial, wherein the Defendants argued that La.Civ.Code art. 493 was applicable in this matter, not La.Civ.Code art. 497. On appeal, the Defendants reiterate: "The facts of this case fit squarely within the four corners of [La.Civ.Code] art. 493. The only remedies that are available under Article 493 are for the owner of the structure to remove the structure, or he may abandon the structure to the landowner . . . ." Though it applied La.Civ.Code art. 497, the trial court, in its June 5, 2009 reasons, opined that the application of La.Civ.Code art. 493 would yield the same result as the application of La.Civ.Code art. 497. We agree.

Pursuant to La.Civ.Code art. 493, the Defendants had the right to make a written demand that the Plaintiffs remove the home. Instead, the Defendants sought to reap the rewards of the Plaintiffs' labor and evict them from the home they built on property which they legitimately believed would be donated to them. We find the trial court correctly determined that the same result would be reached if La.Civ.Code art. 493 were applied. The home, which belongs to the Plaintiffs, "remain[s] the

12

property of he who made [it] . . ." as per La.Civ.Code art. 493.

Absent a finding that the trial court's conclusions were unreasonable, we find no clear error in the trial court's judgment and, therefore, affirm the trial court's judgment in favor of the Plaintiffs/Appellees, Peter Norman Broussard, Jr. and Patsy Compton Broussard.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the Defendants/Appellants, Theta Charles Compton, Woodrow Mays Compton, and Elva Fay Compton.

**AFFIRMED.**